Filed 5/13/21  Epstein v. Prescott Neighborhood Partners CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEWIS EPSTEIN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> PRESCOTT NEIGHBORHOOD PARTNERS, LLC et al., <br><br> Defendants and Respondents. | A159185 <br><br> (Alameda County <br> Super. Ct. No. RG19010256) |

Plaintiffs Lewis Epstein and the Chase-McElroy Justice League appeal from a trial court order partially granting a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[1] Plaintiffs' complaint alleged claims arising out of a previous lawsuit in which one of the defendants, Prescott Partners, LLC (Prescott Partners), obtained a judgment quieting title to real property in Oakland.  On appeal, plaintiffs argue that the court erred in ruling on the motion.  We disagree and affirm.

---

[1] Such a motion is referred to as an anti-SLAPP motion.  "An anti-SLAPP motion seeks to strike a '[s]trategic lawsuit against public participation,' that is, a 'SLAPP.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.)  All further statutory citations are to the Code of Civil Procedure unless otherwise indicated.

1

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

In late 2016, Prescott Partners filed a quiet title action to acquire a fee interest in real property that we will refer to as the "Chase Street property." The quiet title complaint alleged that the property included two components: Parcel A—which was used "as a street"—and Parcel B—which Prescott Partners referred to as a "Frontage Strip" adjacent to the street. The complaint alleged that Prescott Partners owned property next to Parcel B, which would be landlocked without a judgment quieting the parcel's title. The complaint sought to quiet title in Parcel B for the benefit of Prescott Partners and to quiet title in Parcel A for the benefit of the City of Oakland (City). Specifically, Prescott Partners "irrevocably commit[ted] that, upon quieting title to the fee interest in Parcel A, it [would] make an offer of dedication of Parcel A to the City."

In 2017, the trial court in the quiet title action considered "declarations and documentary evidence submitted by [Prescott Partners]," including a letter from the director of the City's Planning and Building Department supporting the action, "at a hearing held pursuant to [section] 764.010." The court then entered judgment quieting title to the Chase Street property in favor of Prescott Partners.

About two years later, in March 2019, plaintiffs filed the complaint in this case against Prescott Partners, its alleged controlling member, Kathleen Kuhner, and other parties associated with it (collectively, the Prescott defendants).[2] According to the complaint, Epstein owns a parcel next to the

---

[2] The other associated parties are Thomas V. "Toby" Roebuck, an individual and trustee of the Thomas V. Roebuck 1992 Revocable Trust, alleged to be a member of Prescott Partners, and Dogtown Development

2

Chase Street property.[3] The Chase-McElroy Justice League is an unincorporated association of other neighbors whose property rights were allegedly affected by the quiet title action. The complaint alleged that Kuhner and Prescott Partners wrongfully pursued the prior action and "obtained a secret default judgment under false pretenses." It further alleged that after obtaining the quiet title judgment, Kuhner "blocked the use of [a] gate" that opened from Epstein's property onto the Chase Street property, leaving Epstein without "unimpeded access to his own parcel" from the Chase Street property. And it alleged that the Prescott defendants "conspired to convert property rights in Chase Street that have been owned by others since the late 19th century"—namely Mary A. Stevens, the owner of record as of 1877, and her descendants—"for [the defendants'] own personal private profit."[4]

Plaintiffs' complaint asserted seven causes of action, five of which are at issue in this this appeal: 1) a cause alternatively labeled as "Adverse Possession, Prescriptive Easement, Implied Easement, Marginal Street Doctrine" and "QUIET TITLE – Reformation of Deed"; 2) a cause for "Violation of the Subdivision Map Act"; 3) a cause for declaratory relief; 4) a cause for unfair business practices; and 5) a cause for fraud and deceit. The

Company, LLC, alleged to be a member of Prescott Partners and controlled by Kuhner. The complaint also named as a defendant Rachel Flynn, the former director of the City's Planning and Building Department, but she did not join the anti-SLAPP motion and is not a party on appeal.

[3] A surveyor's map submitted in the quiet title action shows that Epstein's property address is on Pine Street, which is perpendicular to Chase Street, and shares a side property line with Parcel A and a rear property line with Parcel B.

[4] The only defendants Prescott Partners specifically identified in the quiet title complaint were Stevens's successors, and no neighbors of the property, including Epstein, were named.

3

two causes of action not at issue in this appeal were for conversion and public nuisance.

The Prescott defendants responded to the complaint by filing an anti-SLAPP motion to strike the five causes of action at issue. The motion asserted that the causes were premised on constitutionally protected activity, namely, Prescott Partners's pursuit of the quiet title action. Specifically, the motion asserted that "the alleged bad acts . . . ar[o]se out of the . . . (i) filing and prosecution of a quiet title action; (ii) statements made . . . to government agencies; and (iii) legal acts to protect Prescott's property rights." The motion did not, however, seek to strike the complaint to the extent plaintiffs sought declaration of an easement.

Plaintiffs opposed the motion, arguing that it lacked merit because Prescott Partners's "procuring a void default judgment in a quiet title action with no evidentiary hearing or live witness testimony" is not protected activity for purposes of an anti-SLAPP motion. They argued that the motion also lacked merit because the five causes of action were meritorious.

At the hearing on the anti-SLAPP motion, the trial court accepted the Prescott defendants' proffered evidence, excluded plaintiffs' proffered evidence, and granted a request for judicial notice. These evidentiary rulings are not challenged on appeal. In deciding the motion, the court found there was no genuine dispute that the claims arose out of constitutionally protected activity, and it found that plaintiffs had failed to show a likelihood of success insofar as they sought to vacate the quiet title judgment. The court therefore granted the motion and struck all the challenged causes except for the one for declaratory relief, which the court concluded did not challenge protected activity to the extent it sought merely an easement or related rights not implicated in the quiet title action.

4

*A.    The Governing Law*

"Section 425.16 provides . . . that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) 'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .' (*Id.*, subd. (e).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 87–88.)

The analysis of an anti-SLAPP motion has two steps.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061.)  In the first step, a court considers whether the defendant demonstrated that "the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)," and is therefore protected activity.  (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1043.)  "The 'principal thrust or gravamen' of [the plaintiff's] claim determines whether section 425.16 applies."  (*Olive Properties, L.P. v. Coolwaters Enterprises, Inc.* (2015) 241 Cal.App.4th 1169, 1175.)  If the defendant cannot make the required showing, or " 'if the allegations of protected activity are only

incidental to a cause of action based essentially on nonprotected activity,' " the anti-SLAPP motion must be denied. (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1251; see *Flatley v. Mauro* (2006) 39 Cal.4th 299, 317.)

If the defendant makes the required showing in the first step, the burden shifts to the plaintiff in the second step to demonstrate "that there is a probability that [it] will prevail" on the claim at issue. (§ 425.16, subd. (b)(1).) In determining whether the plaintiff has carried this burden, the court considers "the pleadings . . . and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The second step has been described as a " 'summary-judgment-like procedure' " during which "[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384–385.) The plaintiff cannot, however, sustain its burden with inadmissible evidence or new allegations and claims. (*Kreeger v. Wanland* (2006) 141 Cal.App.4th 826, 831; see *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1547.)

"Only a [claim] that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.) We independently review the denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1067.)

## B.     *The Trial Court Correctly Ruled on the Anti-SLAPP Motion.*

### 1.     The trial court properly found that the gravamen of the challenged causes arose from protected activity.

Plaintiffs first argue that the trial court erred in partially granting the anti-SLAPP motion because the activity giving rise to the claims—the conduct in obtaining the quiet title judgment—was not protected. We are not persuaded.

Filing a lawsuit is an aspect of the First Amendment right of petition, and a claim based on actions taken in litigation fall squarely within the ambit of the first step of the anti-SLAPP analysis. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 113–114; *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 759.) Thus, we have no difficulty concluding that litigation of the prior quiet title action was protected activity.

Plaintiffs do not dispute the general proposition that litigation-related activity is protected. Instead, they argue that securing a quiet title judgment based on limited evidence, without the testimony of live witnesses, "and for no consideration to Oakland taxpayers or neighboring property owners," constituted fraud. They complain that "under the trial court's [first-step] logic, the anti-SLAPP framework would preclude <u>any</u> collateral attack on a fraudulent judgment, upending long-standing legal precedent."

Plaintiffs confuse the issue whether the underlying activity was protected with the issue whether it was lawful or proper. "The first step of the anti-SLAPP analysis is limited to whether a claim arises from protected activity," and "conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424.) In other words, unless the defendant "concede[s] the point, or the evidence conclusively demonstrate[s] it, . . . a claim of

7

illegality [does not] defeat an anti-SLAPP motion at the first step." (*Ibid.*) No such evidence exists here. Thus, in ruling that the pursuit of the quiet title action was protected activity, the court properly delayed addressing the merits of plaintiffs' allegations until the second step of the anti-SLAPP analysis.

  2. The trial court correctly found that plaintiffs failed to demonstrate a probability of success on the stricken claims.

  Before addressing the second-step analysis, we emphasize the limited scope of the trial court's ruling and our restricted ability to review it. First, the ruling's scope is limited because, although the trial court struck plaintiffs' claims challenging the quiet title judgment, the court expressly declined to strike plaintiffs' request for declaratory relief to the extent they sought an "easement and related rights" in the Chase Street property. On appeal, the parties agree that the request for an easement was not stricken, and no one challenges that aspect of the ruling. Thus, the limited question before us is whether the court correctly struck the causes and allegations that sought to vacate the quiet title judgment.

  Second, our ability to review the trial court's ruling is also constrained. In considering the anti-SLAPP motion the trial court admitted defendants' proffered evidence and granted a request for judicial notice, but it excluded plaintiffs' proffered evidence. Plaintiffs do not challenge these evidentiary rulings on appeal. As a result, we can consider only the admitted evidence, and plaintiffs have forfeited any argument that the evidence they unsuccessfully sought to introduce established a probability that their claims would succeed. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538 [failure to brief issue on appeal waives it].)

  With these considerations in mind, we proceed with the second-step analysis. In the complaint's first cause of action, plaintiffs alleged that

8

Epstein owns a lot adjacent to the Chase Street property and "is also the fee owner by adverse possession and/or prescriptive easement and/or implied easement and/or marginal street doctrine of a portion of Chase Street." Because plaintiffs thereby asserted a fee ownership in the property based on circumstances that existed when the quiet title judgment was entered, we agree with the trial court that they effectively sought to vacate that judgment. Thus, they could not demonstrate a probability of success on this claim, since generally a quiet title judgment "is binding and conclusive," even as to parties who were not parties to the quiet title action "at the time the judgment was recorded." (§ 764.030, subd. (b).)

It is true that there are exceptions to this rule, such as when a person's claim to the property "was actually known to the [quiet title] plaintiff or would have been reasonably apparent from an inspection of the property at the time . . . judgment was entered." (§§ 764.030, subd. (b), 764.045, subd. (b).) Although plaintiffs argue that Prescott Partners knew or should have known of Epstein's claim to an easement, they presented no evidence suggesting that Prescott Partners knew or should have known that Epstein had any *possessory* right to the property.[5] An easement creates a nonpossessory right to enter and use land in another's possession (12 Witkin, Summary of Cal. Law (11th ed.) Real Property, § 396), but "[i]n a quiet title action the plaintiff must prove his [or her] *title* in order to recover." (*Pacific States Savings & Loan Co. v. Warden* (1941) 18 Cal.2d 757, 759, italics

---

[5] At oral argument, plaintiffs argued that we should consider, under our de novo standard of review, evidence they proffered at the hearing that the trial court deemed inadmissible. According to plaintiffs, we should consider this evidence to determine whether Epstein asserted a possessory interest in the Chase Street property under the marginal street doctrine. But plaintiffs did not argue in their appellate briefing that the trial court's evidentiary ruling was erroneous, and they therefore forfeited the argument.

9

added.) Merely presenting evidence challenging the defendant's title is insufficient. (*Landini v. Day* (1968) 264 Cal.App.2d 278, 284; see *Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 58 [standing to seek to quiet title depends on having interest in the property].) Thus, plaintiffs did not establish they were likely to succeed in overturning the judgment in the quiet title action on the basis that Epstein was not a party to the action.

Plaintiffs' second cause of action was titled "Violation of Subdivision Map Act." In it, plaintiffs alleged the Prescott defendants "misrepresented that Chase Street was an orphan lot" and "misrepresented the [property's] true nature . . . in order to effectuate a merger of their parcels in violation of the specific requirements of the Subdivision Map Act." The trial court found that plaintiffs failed to meet "their burden to demonstrate that a merger ever took place or that a subdivision map was ever recorded." We agree. Prescott Partners may have quieted title to Parcel A and Parcel B of the Chase Street property, but nothing in the record establishes that a subdivision or a merger of properties was sought or achieved. (See *Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 445 [Subdivision Map Act applies to *subdividers* of property].)

The next cause of action, titled "Unfair Business Practices," alleged that the Prescott defendants "committed document fraud . . . by submitting false documents and misrepresenting a document as a judgment and not as a default judgment to the County Recorder's Office." The trial court found that plaintiffs presented "no admissible evidence to support this cause of action." And it held that the allegation that the Prescott defendants wrongly identified the judgment as a judgment rather than a default judgment was meritless. We again agree with the court's rulings. The quiet title judgment itself specifies that it was rendered in accordance with the procedures set

10

forth in section 764.010.  While plaintiffs are correct that default judgments are not allowed in quiet title actions (see *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1508), nothing in the statute requires live testimony at the hearing.  The statute simply requires "evidence of plaintiff's title" and requires the court to "hear such evidence as may be offered respecting the claims of any of the defendants."  (§ 764.010.)  These requirements were apparently satisfied, and plaintiffs did not show otherwise.

Nor can we find any error in the striking of the final cause of action at issue, for "fraud and deceit."  The trial court found that plaintiffs failed to show the claim had merit because, among other things, they presented no basis for concluding that they relied on statements made by the Prescott defendants before the quiet title judgment was entered.  (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [cause of action for fraud or deceit requires specific allegations of justifiable reliance].)  Plaintiffs do not convince us otherwise.  In addition, we agree with the court that plaintiffs failed to demonstrate that statements made by the Prescott defendants in the context of the quiet title proceedings were not covered by the litigation privilege.  (See Civ. Code, § 47, subd. (b).)

Finally, to the extent plaintiffs present arguments and claims on appeal that were not raised below, we reject them.  (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [parties forfeit arguments not raised in the trial court]; *Hansen v. Department of Corrections & Rehabilitation, supra,* 171 Cal.App.4th at p. 1547 [plaintiff cannot defeat an anti-SLAPP motion by raising new allegations and claims].)  The trial court properly ruled that plaintiffs failed to demonstrate a probability of success on the stricken causes of action.

11

### III.
### DISPOSITION

The order granting respondents' anti-SLAPP motion is affirmed.

Respondents are awarded their costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.


_____
Banke, J.


*Epstein et al. v. Prescott Neighborhood Partners et al.*  A159185